**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EDWARD L. SCHERER; | § | |
| Individually, and on behalf of all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:20-cv-01297 |
| v. | § | |
| | § | |
| FROST BANK, | § | |
| | § | |
| Defendant. | | |

## DEFENDANT FROST BANK'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED  COMPLAINT

June 9, 2020

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDING ........................................................... 1

II.    ISSUE TO BE RULED UPON BY THE COURT ......................................................... 2

III.   STANDARD OF REVIEW ......................................................................................... 2

IV.   BACKGROUND FACTS ............................................................................................ 3

V.     PLAINTIFF'S CLAIMS ............................................................................................ 4

VI.   SUMMARY OF ARGUMENT .................................................................................. 5

VII.   ARGUMENTS AND AUTHORITIES ....................................................................... 7

   A.    Statutory Background .................................................................................................. 7

   B.    Plaintiff Lacks a Private Right of Action to Assert Claims under the CARES Act and Small Business Act. ..................................................................................................... 8

      1.    There is no implied private right of action under the CARES Act. .............................. 9

      2.    Decades of precedent agree that the SBA does not contain an implied right of action. 14

   C.    Frost Bank did not violate the CARES Act. .................................................................. 15

   D.    The Declaratory Judgment Act Does Not Provide a Cause of Action ............................. 17

   E.    Plaintiff's Injunction Claims Fail ................................................................................. 18

   F.    Plaintiff's New State-Law Claims (Counts 4 through 7) Fail .......................................... 21

VIII.   CONCLUSION .......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aardwoolf Corp. v. Nelson Capital Corp.*,
  861 F.2d 46 (2d Cir. 1988)..................................................................................14

*Acara v. Banks*,
  470 F.3d 569 (5th Cir. 2006) (per curiam)..................................................................9

*Alexander v. Sandoval*,
  532 U.S. 275 (2001).........................................................................................9

*Allied Marketing Group, Inc. v. CDL Marketing, Inc.*,
  878 F.2d 806 (5th Cir. 1989) ..............................................................................18

*Aquifer Guardians in Urban Areas v. Fed. Highway Admin.*,
  779 F. Supp. 2d 542 (W.D. Tex. 2011)....................................................................19

*Astra USA, Inc. v. Santa Clara Cty., Cal.*,
  563 U.S. 110 (2011).......................................................................................13

*Boswell v. Skywest Airlines, Inc.*,
  361 F.3d 1263 (10th Cir. 2004) ...........................................................................14

*Bulluck v. Newtek Small Bus. Fin., Inc.*,
  No. 19-10238, 2020 WL 1490702 (11th Cir. Mar. 27, 2020) (per curiam)...........................14

*Cannon v. Univ. of Chicago*,
  441 U.S. 677 (1979).......................................................................................12

*Central Laborer's Pension Fund v. Integrated Electrical Services, Inc.*,
  497 F.3d 546 (5th Cir. 2007) ...............................................................................2

*Cort v. Ash*,
  422 U.S. 66 (1975)........................................................................................10

*Delancey v. City of Austin*,
  570 F.3d 590 (5th Cir. 2009) ...............................................................................9

*Gonzaga Univ. v. Doe*,
  536 U.S. 273 (2002)........................................................................................9

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) ..............................................................................25

*Harris Cty. v. MERSCORP Inc.*,
    791 F.3d 545 (5th Cir. 2015) ..................................................................7, 8, 17

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020) .......................................................................... 12

*INS v. Cardoza–Fonseca*,
    480 U.S. 421 (1987) ...............................................................................15

*Integrity Mgmt. Int'l, Inc. v. Tombs & Sons, Inc.*,
    836 F.2d 485 (10th Cir. 1987) ................................................................14

*Janvey v. Alguire*,
    647 F.3d 585 (5th Cir. 2011) .................................................................18

*Jones v. Greninger*,
    188 F.3d 322, 327 (5th Cir. 1999) .........................................................25

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ...................................................................2

*Kennedy v. Chase Manhattan Bank USA, NA*,
    369 F.3d 833 (5th Cir. 2004) ...................................................................4

*Love v. Delta Air Lines*,
    310 F.3d 1347 (11th Cir. 2002) .............................................................10

*Martinez–Castañeda v. Haley*,
    2013 WL 12106712 (W.D. Tex. July 1, 2013) .......................................20

*Muhammad v. Dallas County Cmty. Supervision & Corr. Dep't*,
    479 F.3d 377 (5th Cir. 2007) ...................................................................2

*Profiles, Inc. v. Bank of Am. Corp.*,
    2020 WL 1849710 (D. Md. Apr. 13, 2020) .....................................5, 12, 16, 20, 21

*Profiles, Inc. v. Bank of Am. Corp.*,
    2020 WL 1905694 (D. Md. Apr. 17, 2020) ..............................................6

*Searcy v. Houston Lighting & Power Co.*,
    907 F.2d 562 (5th Cir. 1990) .................................................................14

*Shinault v. American Airlines, Inc.*,
    936 F.2d 796 (5th Cir. 1991) .................................................................11

*Stokes v. Southwest Airlines*,
    887 F.3d 199 (5th Cir. 2018) .................................................................11

*Sullivan v. Little Hunting Park, Inc.*,
  396 U.S. 229 (1969).........................................................................................10

*Texas v. United States*,
  86 F. Supp. 3d 591 (S.D. Tex. 2015) .............................................................19

*Unsecured Creditors' Comm. 82-00261c-11A v. Walter E. Heller & Co.*,
  768 F.2d 580 (4th Cir. 1985) .........................................................................15

*Villarreal v. Wells Fargo Bank, N.A.*,
  814 F.3d 763 (5th Cir. 2016) .........................................................................25

*W. Ala. Quality of Life Coal. v. U.S. Fed. Highway Admin.*,
  302 F. Supp. 2d 672 (S.D. Tex. 2004) ...........................................................21

*Ziglar v. Abbasi*,
  582 U.S. __ (2017).........................................................................................10

**Rules and Statutes**

15 U.S.C. § 636 ......................................................................................................1, 3

CARES Act, S. 3548, 116th Cong., § 1102(d)(2)(B) ............................................15

Fed. R. Civ. P. 12(B)(6)..............................................................................................1

Defendant Frost Bank ("Frost Bank"), pursuant to Fed. R. Civ. P. 12(b)(6), moves the court to dismiss all claims asserted by Plaintiff Edward L. Scherer ("Plaintiff") in his First Amended Original Class Action Complaint ("FAC") (ECF 10), on the grounds that there is no private right of action to assert alleged violations of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (P.L. 116 - 136; 13 C.F.R. Part 120) and the Small Business Administration's 7(A) loan program (15 U.S.C. § 636(a)), and even if such a right existed, which it does not, Frost Bank is not violating the CARES Act nor the Small Business Act ("SBA"), of which the CARES Act is a part.  Frost Bank also moves the court to dismiss Plaintiff's claim for declaratory relief concerning the alleged invalidity of Frost Bank's CARES Act loan application process, common law claims, and requests for a temporary and permanent injunction, on these same grounds and the failure to plead any irreparable harm.  Finally, Frost Bank moves for dismissal of the state-law claims, all of which depend on the alleged violation of federal law.

## I.   <u>NATURE AND STAGE OF THE PROCEEDING</u>

The putative class action accuses Frost Bank of prioritizing its existing business customers when lending funds as part of the Paycheck Protection Program ("PPP" or "Program"), under which the United States Small Business Administration will guarantee up to $659 billion in loans to aid small businesses in response to the economic crisis caused by COVID-19. *See generally* FAC; Exh. 1 (Interim Rule); Exh. 3 (adding funds).

On May 15, 2020, Frost Bank filed a Motion to Dismiss all causes of action in Plaintiff's Original Complaint. ECF 7. Thereafter, Plaintiff amended to add common law

causes of action (ECF 10), mooting Frost's initial Motion (ECF 11). No discovery has been

taken. The Court set an initial pretrial and scheduling conference for July 9, 2020.

## II.      ISSUE TO BE RULED UPON BY THE COURT

**Question Presented:** Under Rule of Civil Procedure 12(b)(6), did Plaintiff fail to

state a claim upon which relief can be granted when he alleged a private right of action

under the CARES Act and SBA 7(A) loan program asserting that imposing restrictions to

limit applicants to existing business deposit customers, as other banks have done, is an

alleged violation of the CARES Act?

**Proposed Answer**: Yes, where there is neither an express nor implied private right

of action, and where Frost Bank's conduct did not violate the CARES Act and SBA 7(A)

loan program, and caused no harm to Plaintiff, Plaintiff fails to state a valid claim for relief

under federal or state law.

## III.      STANDARD OF REVIEW

"To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state

a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495

F.3d 191, 205 (5th Cir. 2007). The court accepts all well-pleaded facts as true, viewing

them in the light most favorable to the plaintiff, *Muhammad v. Dallas County Cmty.*

*Supervision & Corr. Dep't,* 479 F.3d 377, 379 (5th Cir. 2007), but need not accept as true

conclusory allegations or unwarranted deductions of fact, *Central Laborer's Pension Fund*

*v. Integrated Elec. Servs., Inc.,* 497 F.3d 546, 550 (5th Cir. 2007).   If the well-pleaded,

non-conclusory statements of fact fail to state a claim upon which relief can be granted,

dismissal of the complaint is proper.  *Muhammed*, 479 F.3d at 379-80.

## IV.   **BACKGROUND FACTS**

On March 27, 2020, the United States Congress passed the Coronavirus Aid, Relief, and Economic Security Act,  P.L. 116- 136; 13 C.F.R. Part 120.  Exh. 1.  Under the CARES Act, the Administrator of the Small Business Administration has the authority "to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency." *Id.* at 3. Section 1102 of the CARES Act amended the SBA, 15 U.S.C. § 636, and established the PPP, under which participating lenders are authorized to make loans to eligible small businesses. *See* P.L. No. 11-136, § 1102(a)(2). The CARES Act does not create a private right of action in favor of any private party and does not require banks to provide loans under the PPP.

Frost Bank is a Texas-chartered bank based in San Antonio with approximately 142 branches, all in Texas. FAC, ¶ 4. Frost Bank began offering loans under the Program shortly after its inception.  It is estimated that 2,400 other banks also participated in the Program, amid unprecedented demands for small business financing.  Frost Bank was the 14th largest first-round PPP lender. During the first round of funding, more than 65 percent of the loans it approved were for less than $150,000. Including the second round, approximately 87.7% of Frost Bank's PPP approved loans have been for less than $350,000, for businesses with less than 25 employees.  Chairman Phil Green publicly credited Frost Bank staff for volunteering during the pandemic to help small, community businesses obtain loans during this time of crisis.[1] Frost Bank has outpaced larger lending

---

[1] *See* "How a Texas bank outpaced Bank of America on PPP loans," April 29, 2020 edition of Fox Business, available at: https://video.foxbusiness.com/v/6152975743001/#sp=show-clips

institutions in its efforts to process PPP applications and get funds to small businesses. By prioritizing existing small business customers, Frost was able to expedite processing loan applications and accomplish more loans in a shorter time.[2]

## V.      PLAINTIFF'S CLAIMS

Plaintiff alleges that Frost Bank has improperly limited eligibility for Frost Bank PPP loans to small businesses that were existing business checking account customers as of April 1, 2020.  FAC, ¶ 24, Exh. A (portions of Frost Bank website).  Plaintiff alleges he "did not have a business checking account with Frost Bank as of April 1, 2020, and was thus ineligible to apply for a PPP loan under Frost Bank's self-declared criterion that created an impermissible restriction upon, and violated, the CARES Act."  FAC, ¶ 21. Plaintiff purports to bring his claims individually and on behalf of a class of "(a) all individuals or entities who qualify for a loan under the PPP and who were (b) prevented from even applying for a PPP loan by Frost Bank solely because they do not have a pre-existing business checking and/or debt relationship with Frost Bank."  FAC, ¶ 31.

**Count one** of the FAC alleges that the eligibility parameters are violations of the CARES Act, H.R. 748.  FAC, ¶¶ 45-51.  Similarly, **Count two** alleges that the eligibility parameters are violations of the SBA's 7(a) Loan Program.  FAC, ¶¶ 52-57.  In **Count three** of the FAC, Plaintiff seeks a declaratory judgment and preliminary and permanent injunction pursuant to 28 U.S.C. §§ 2201 and 2202 that Frost Bank's CARES Act loan

---

[2] These underlying facts concerning Frost Bank and its PPP loan statistics are not offered as evidence in support of this Motion, but they may generally aid in putting the claims in context. This Motion is based on facts in the FAC, and documents attached to the FAC. *Kennedy v. Chase Manhattan Bank*, 369 F.3d 833, 839 (5th Cir. 2004).

application procedure, requiring "that applicants have a business and/or lending relationship with Frost Bank in order to apply for a PPP loan" be declared void, invalid and unenforceable. FAC, ¶ 61. Plaintiff's FAC adds claims based on the consumer protection laws of 24 states (**Count four**), and common law claims for negligence (**Count five**), fraud (**Count six**), and unjust enrichment (**Count seven**). FAC ¶¶ 72-90.

Plaintiff alleges that he is "a small business that qualifies as an eligible applicant for a PPP loan under the CARES Act," FAC, ¶ 14, and "otherwise meet[s] the statutory requirements for a PPP loan." FAC, ¶ 6. Plaintiff does not identify his small business, the eligibility criteria, or any specific facts related to meeting the criteria. He does not allege any specific efforts he has taken to obtain a PPP loan. Plaintiff does not allege that he has applied for a PPP loan from any lending institution, including Frost Bank. Plaintiff has not asserted that he has been foreclosed entirely from applying for a PPP loan, and does not allege that he has failed to receive a PPP loan from other lenders. Plaintiff has filed a similar suit making similar unfounded claims against Wells Fargo Bank, N.A. *See* No. 4:20-cv-01295 (S.D. Tex.), pending before Judge Hittner.

## VI.    SUMMARY OF ARGUMENT

The CARES Act contains no express right of action for private parties. The same is true of the broader Small Business Act. Under settled law, no such right can be implied. On April 13, 2020, a Maryland District Court in *Profiles, Inc. v. Bank of Am. Corp.*, 2020 WL 1849710, (D. Md. Apr. 13, 2020) (denying motion for TRO, ECF 17) ("*Profiles* Mem. Op."), concluded that the CARES Act provides neither an express nor an implied private right of action. *Id.* at 7–13. *Profiles* is very similar to the instant case. In *Profiles,* small

businesses filed a complaint seeking a temporary restraining order against Bank of America Corporation ("BofA") to enjoin the bank from imposing restrictions on borrower eligibility under the PPP in addition to the eligibility requirements set forth in the CARES Act.

Even assuming, *arguendo*, that a private right of action exists, Frost Bank's challenged conduct here does not run afoul of the CARES Act. The *Profiles* court rejected a similar argument and found that BofA's eligibility criteria do not contravene the plain language of the CARES Act. *Id.* at 13-15. Both of these grounds, the court concluded, were independently sufficient to deny requests for a TRO and a preliminary injunction. *Id.* at 7-15. Finally, the court concluded that even assuming *arguendo* that the CARES Act provides a private right of action, and BofA's conduct ran afoul of the statute, Plaintiffs had nonetheless still failed to establish the remaining factors necessary for the entry of a TRO. *Id.* at 16-23. Accordingly, the court issued an Order denying Plaintiffs' Motion (*Profiles*, ECF 18). Plaintiffs filed an interlocutory appeal with the U.S. Court of Appeals for the Fourth Circuit, and sought an emergency stay pending that appeal (*Profiles*, ECF 21). The court denied the Motion for Emergency Stay and wrote that "BofA can continue implementing its existing policy" *Profiles, Inc. v. Bank of Am. Corp.*, 2020 WL 1905694 (D. Md. Apr. 17, 2020) (denying motion for stay pending appeal, ECF 27). The *Profiles* court found that the language of the CARES Act and SBA, respectively, do not prohibit banks from considering other information when deciding from whom to accept applications, or in what order to process the applications they accept. *Profiles* Mem. Op. at 14. The court also noted a more restrictive version of the CARES Act, which would have limited the criteria that lenders could consider, was rejected by Senate committee. *Id.*

While the decision in *Profiles* is not binding on this court, it is authority upon which the court may rely when analyzing similar claims made under the CARES Act. It is the only decision of which Frost Bank is aware which interprets the existence of private rights of action under the CARES Act. Much of the FAC is copied verbatim from the *Profiles* Complaint, and Plaintiff expressly seeks to draw a parallel to *Profiles*. *See* FAC, ¶ 30 ("Frost Bank, like Bank of America, is engaging in unacceptable, shameless and brazen behavior it knows violates the statute.").

Plaintiff fails to state a claim for declaratory relief because his declaratory allegations concern the same conduct he complains of in Counts 1 and 2, respectively. Each of those claims fail and the Declaratory Judgment Act ("DJA") does not create a separate, viable federal cause of action. *Harris Cty. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). Similarly, Plaintiff's claims for injunctive relief fail because Plaintiff does not allege a viable cause of action, and Plaintiff does not adequately allege irreparable harm.

Plaintiff attempts to elude a lack of a private right of action under the CARES Act by adding common law claims. The FAC should be dismissed for the same reasons as the Original Complaint and because Plaintiff does not plead facts to support the state law claims. Frost Bank moves to dismiss each of Plaintiff's claims in their entirety.

## VII.   ARGUMENTS AND AUTHORITIES

### A.   Statutory Background

The CARES Act authorizes participating lenders to make business loans to eligible recipients, to cover payroll and other expenses. *See* § 1102(a)(2), (b)(1). To implement the Act, the Administrator issued an "Interim Final Rule," Exh. 1; 13 C.F.R. Part 120, which

explains that loans issued through PPP are federally guaranteed up to a maximum amount of $10 million per loan. Exh. 1 at 8. The CARES Act provides for forgiveness of up to the principal amount on qualifying loans. *Id.* at 3; *see also* CARES Act § 1106.

The CARES Act says that lenders "shall consider" whether the borrower: (1) "was in operation on February 15, 2020," and (2) either "had employees for whom the borrower paid salaries and payroll taxes" or "paid independent contractors." *Id.* § 1102(a)(2). The PPP lender application form lists two multi-part eligibility requirements for borrowers, including certifications as to the business's operations (including size), the necessity of the loan, the use of funds, that the applicant has not received another PPP loan.  *See* Exh. 2.

The Interim Final Rule lists a number of reasons why an applicant may be deemed "ineligible" for a PPP loan. Exh. 1 at 7-8.  As the *Profiles* court expressed, "neither the CARES Act nor the Interim Final Rule imposes prohibitions on what lenders may do in their processes for accepting or processing applications."  *Profiles* Mem. Op. at 7. Plaintiff alleges that Frost Bank's eligibility requirements are inconsistent with § 1102(a)(2) and with the Interim Final Rule.  FAC, ¶¶ 47-49.

**B.    Plaintiff Lacks a Private Right of Action to Assert Claims under the CARES Act and Small Business Act.**

Plaintiff cannot reach the merits of his dispute because, as a threshold matter, the CARES Act contains no express or implied right of action for private parties.  *See Harris Cty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015) ("[I]dentif[ying] a private right of action" is a "threshold" requirement "[t]o raise a claim in federal court."). The

*Profiles* court, the sole court to interpret this issue, was explicit: "[t]he CARES Act does not expressly provide a private right of action." *Profiles* Mem. Op. at 7.

Because the CARES Act does not expressly provide a private right of action, Plaintiff must demonstrate that Congress intended for the statute to have an implied private right of action. Inferring a private right of action is a matter of statutory interpretation places the "relatively heavy burden" on the Plaintiff "to show Congress intended private enforcement." *See Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006) (per curiam). In doing so, a Plaintiff "must overcome the presumption that Congress did not intend to create a private cause of action." *Acara*, 470 F.3d at 571-72. To overcome that burden, plaintiffs must show that, in the CARES Act, Congress created a private right of action "in clear and unambiguous terms." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002). Plaintiff cannot meet the burden and no such right can be implied here. The *Profiles* court, the sole court to interpret the issue, found that no implied private right of action exists under the CARES Act. *Profiles* Mem. Op. at 7-13. Frost Bank is not aware of any case finding a private right of action in any section of the Small Business Act, nor any courts that have inferred a private right of action from the weeks-old CARES Act.

### 1.  *There is no implied private right of action under the CARES Act.*

Whether a given statute should be enforceable through private civil lawsuits is, like any aspect of statutory design, fundamentally up to Congress. *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001); *Delancey v. City of Austin*, 570 F.3d 590, 592–93 (5th Cir. 2009). Often, Congress expressly provides for private civil enforcement. Other times, Congress specifies only criminal enforcement, or leaves civil enforcement to administrative

agencies. Courts are bound to follow Congress's choices and to ascertain them through the tools of statutory interpretation. *Sandoval*, 532 U.S. at 286-87. "If the statute does not itself so provide, a private cause of action will not be created through judicial mandate." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017).  Courts look to the "text and structure" of the statute for congressional intent, examining whether "'rights-creating language'" exists. *Sandoval,* 532 U.S. at 288. The CARES Act contains no such language concerning implied rights or remedies.  If Congress is silent or ambiguous, courts may not find a cause of action 'no matter how desirable that might be as a policy matter.'" *Id.* at 286-87.

This was not always the case. During the mid-twentieth century, the U.S. Supreme Court viewed the fashioning of statutory remedies as within the proper judicial role. *Id.* at 1855. Under the now-abandoned maxim that "a statutory right implies the existence of all necessary and appropriate remedies," this "*ancien regime*" routinely inferred private rights of action from silent statutory text. *Id.* (quoting *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239 (1969)). The Supreme Court's approach has since evolved. Starting in *Cort v. Ash*, 422 U.S. 66 (1975), affirmative congressional intent became one of four relevant factors (though not always a necessary one), *see id.* at 78, 82, and the next two decades of cases increasingly focused on congressional intent alone, *see, e.g.*, *Love v. Delta Air Lines*, 310 F.3d 1347, 1351-52 & n.2 (11th Cir. 2002) (collecting cases).

That trend culminated in the Supreme Court's *Sandoval* decision, which today defines the method for identifying private rights of action. *Sandoval*'s command is clear: "[t]he judicial task is to interpret *the statute Congress has passed*" and to do so by consulting statutory structure and text. *Id.* at 286, 288 & n.7 (emphasis added).  "Legal

context," such as prevailing law at the time of the statute's enactment, matters "only to the extent it clarifies text." *Id.* at 288. And absent "affirmative" evidence of intent to allow private civil suits, there can be no private right of action—"no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87, 293 n.8.

The Fifth Circuit has rejected decisions which apply "pre-*Sandoval* reasoning" to a court's analysis of inferring a private right of action. Ultimately, the Fifth Circuit in *Stokes v. Southwest Airlines*, 887 F.3d 199 (5th Cir. 2018) expressly overruled precedent set nearly thirty years ago in *Shinault v. American Airlines, Inc.*, 936 F.2d 796, 800 (5th Cir. 1991), by holding that the Air Carrier Access Act does not confer a private right of action. In its opinion, the Fifth Circuit describes the history of evolving jurisprudence concerning the construction of statutes that do not expressly provide a private right of action. *Stokes,* 887 F.3d at 201-205.  The *Profiles* court opined that under either standard (*Cort* or *Sandoval*), no private right of action can be found.  *Profiles* Mem. Op. 7 at n. 2 ("[W]hether the Court applies the *Cort* [] or follows [] *Sandoval*, Plaintiffs fail to demonstrate that the CARES Act provides a private right of action.").

> a. **The language of the CARES Act does not evidence requisite congressional intent to create a private right of action.**

First, the language of the CARES Act does not evidence the requisite congressional intent to create a private right of action.  According to the *Profiles* Plaintiffs, in an argument ultimately rejected by the court, the primary indicators of congressional intent to have a private right of action in the CARES Act are: (1) Congress's use of the phrase "any business concern" in § 1102(a)(1), and (2) Congress's directive that regulations issued by the

Secretary of the Treasury "shall" contain "terms and conditions that, to the maximum extent practicable, are consistent with" the borrower eligibility criteria, § 1109(d)(2)(B)(i). *See* ECF 7-1 at 12. However, the term "any qualified small business concern" was codified in the SBA before Congress amended it with the CARES Act, and thus, this language was operative when courts found that the SBA did not contain an implied private right of action.   That the CARES Act makes a small business "eligible to receive a covered loan" if it meets certain criteria, § 1102(a)(2)(D)(i), does not demonstrate Congressional intent that the business should also be able to sue a lender under the statute. As the court explained in *Profiles*, "[e]ven assuming that the CARES Act grants PPP loan applicants [] some statutory right to apply through a particular lender of choice (which is, itself, dubious), **nothing** in its text evidences Congress's intent to enable applicants to bring civil suits against PPP lenders, to enforce that right." 2020 WL 1849710, at \*7 (emphasis added).

As the *Profiles* court opined, to the extent Congress intends to create such a private right of action, it will be able to make its intent clear, if it amends the CARES Act, to include such a right. *Profiles* Mem. Op. at 13. Creation of that remedy, however, is not within the purview of a court. Indeed, "an expansive approach to implied rights of action 'cannot be squared with the doctrine of the separation of powers.'" *Planned Parenthood*, 941 F.3d at 695 (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 742 (1979) (Powell, J., dissenting)); *Hernandez v. Mesa*, 140 S. Ct. 735, 751 (2020) (Thomas, J., concurring).

After Plaintiff filed his Original Complaint on April 12, 2020, after SBA exhausted the funding within 2 weeks, and after the *Profiles* opinion was rendered, on April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act added $310 billion of

funding for PPP loans. *See* CARES Act Amendment at H.R. 266, P.L. 116-139, Exh. 3. The PPP provisions of the CARES Act were further interpreted by the SBA interim final rules issued on April 14, 2020 (Exh. 4), and April 20, 2020 (Exh. 5) (13 C.F.R. Parts 120 and 121), FAQs (Exh. 6), and applicant affiliation principles (Exh. 7). Neither they nor the June 5, 2020 Paycheck Protection Program Flexibility Act (H.R. 7010, providing relief to borrowers), discuss nor confer private rights of action under the CARES Act.

          **b.**      **The CARES Act contains a robust enforcement regime, which undermines a contention that lenders may exploit it.**

Second, the existence of a robust criminal and civil enforcement regime undermines any contention that authorized lenders have free reign to exploit the CARES Act. The SBA, of which the operative sections of the CARES Act are now a part, *does* provide an enforcement mechanism. The SBA does so not by empowering private parties to sue, but by vesting government regulators with authority to hold lenders accountable for violating the statute. *See, e.g.*, 15 U.S.C. §§ 645, 650 (Administrator has authority to institute a civil action against lending companies for violations of the SBA); *see also Astra USA, Inc. v. Santa Clara Cty., Cal.*, 563 U.S. 110, 117 (2011) ("Congress vested authority to oversee compliance [] and assigned no auxiliary enforcement"); *Sandoval*, 532 U.S. at 289–90 (separate enforcement "contradict[s] intent to create privately enforceable rights").

The enforcement scheme demonstrates that Congress did not intend to create an implied private right of action in the SBA or the CARES Act. The detailed statutory structure evinces none of the requisite "affirmative" intent. *Sandoval*, 532 U.S. at 289-93. Quite the opposite: "Congress's creation of specific means of enforcing the statute

indicates that it did not intend to allow an additional remedy—a private right of action—that it did not expressly mention at all." *Boswell v. Skywest Airlines*, 361 F.3d 1263, 1269-70 (10th Cir. 2004); *Sandoval*, 532 U.S. at 290 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.").

**2.     Decades of precedent agree that the SBA does not contain an implied right of action.**

Title I of the CARES Act (the provision containing the PPP) amended the SBA. Although only one Court has had occasion to address whether the CARES Act includes an implied private right of action, courts have previously and consistently found that the SBA does not contain an implied right of action.  The Fifth Circuit, in *Royal Servs., Inc. v. Maint., Inc.*, expressly stated: "there was no intent [in SBA] to create civil rights of action in private persons." 361 F.2d 86, 92 (5th Cir. 1966).[3] Other circuits that have considered the question unanimously agree that the SBA does not create a private right of action.[4] The SBA, of which the operative sections of the CARES Act are a part, *does* provide an enforcement mechanism. The Act does so not by empowering private parties to sue, but by vesting government regulators with authority to hold borrowers and lenders accountable for violating the statute. *See, e.g.*, 15 U.S.C. §§ 645, 650, 13 C.F.R. §§ 120.1400-1600.

---

[3] *See Searcy v. Houston Lighting & Power Co.,* 907 F.2d 562 (5th Cir. 1990) (affirming sanctions where plaintiff brought private action under SBA); *Bulluck v. Newtek Small Bus. Fin., Inc*., No. 19-10238, 2020 WL 1490702, at *3 (11th Cir. Mar. 27, 2020) (per curiam) ("[N]o private right of action exists for a violation of the Small Business Act").

[4] *See, e.g., Aardwoolf Corp. v. Nelson Cap. Corp.,* 861 F.2d 46, 48 (2d Cir. 1988); *Integrity Mgmt. Int'l, Inc. v. Tombs & Sons, Inc.,* 836 F.2d 485, 487 n. 4 (10th Cir. 1987).

### C.     Frost Bank did not violate the CARES Act.

Even assuming *arguendo* that Congress had intended to provide PPP applicants with a private right of action, Frost Bank's challenged conduct here does not violate the CARES Act.  The express language of the CARES Act states that lenders "shall consider whether the borrower . . . was in operation on February 15, 2020," and "had employees for whom the borrower paid salaries and payroll taxes" (or independent contractors). § 1102(a)(2). The statutory language *does not* prohibit banks from considering other information when deciding from whom to accept applications.

The history of the evolution of the CARES Act text shows that Congress intended no such prohibition. In a *previously* introduced version of the bill, the relevant section stated that "a lender shall *only* consider" the date in which the business was operational and whether it had employees "for whom the borrower paid salaries and payroll taxes." CARES Act, S. 3548, 116th Cong., § 1102(d)(2)(B) (emphasis added); Exh. 8 at 8 (emphasis added). The fact that Congress considered including the word "only" in a previous version of the law that failed to win approval in a Senate committee, suggests, at the very least, that the Court should not read that word back into the statute that both houses of Congress enacted. *Cf. Unsecured Creditors' Comm. 82-00261c-11A v. Walter E. Heller & Co.*, 768 F.2d 580, 585 (4th Cir. 1985) (considering that Congress explicitly rejected certain language in a bankruptcy-related bill); *INS v. Cardoza–Fonseca*, 480 U.S. 421, 442–43 (1987) ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend sub silentio to enact statutory language that it has earlier discarded in favor of other language.").  The *Profiles* Court agreed that beyond

setting minimum eligibility criteria, the Act nowhere prohibits participating lenders from determining how best to prioritize to whom they will lend under the Program, and cited the history of the revised version of the statute and its removal of the "only" language, in support of its Order. *Profiles* Mem. Op. at 14.  When it refused to enjoin BofA's restrictions on PPP eligibility, the *Profiles* court went further and held that "prioritizing existing borrowers" is reasonable because it "expedite[s] the processing of loan applications" and is "more efficient for [the lender's] system, and potentially for the overall CARES Act scheme." 2020 WL 1849710, at *12. *See also* Exh. 6 (SBA FAQ at Q. 25, discussing how verification of beneficial ownership information is to be collected from *new* customers pursuant to the lender's Bank Secrecy Act compliance program).

Plaintiff alleges that the "arbitrary limitation(s)" imposed by Frost Bank are "contrary to the law," citing the Twitter feed of U.S. Senator Marco Rubio (R-Fla.).  FAC, ¶ 25.  But this post-passage tweet by one Senator is neither admissible legislative history nor relevant legal authority.  The text of the CARES Act controls and the rejection of the "only" modifier is indicative of the Congress's intent at large.  Senator Rubio appeared to criticize BofA for the multiple requirements later evaluated by the *Profiles* Court, tweeting: "The requirement that a #SmallBusiness not just have a business account but also a loan or credit card is NOT in the law we wrote & passed or in the regulations." FAC, ¶ 25.  The tweet includes a photo of BofA's requirements, with "lending relationship" circled.

In contrast, Plaintiff alleges that Frost Bank has erred solely because it required applicants to maintain *a business checking account relationship* prior to April 1, 2020.  FAC, ¶ 50.  Plaintiff does not allege that Frost Bank's requirements are identical to

those imposed by BofA.[5]  Accordingly, even if the Senator's personal criticism were treated as relevant legislative history (which it is not), it is not dispositive as to Frost Bank.

### D.      The Declaratory Judgment Act Does Not Provide a Cause of Action

In Count 3, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and preliminary and permanent injunction. FAC, ¶¶ 58-65.   The DJA provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

Plaintiff fails to state a claim upon which relief can be granted under the DJA. Fifth Circuit precedent soundly establishes the principle that "the Declaratory Judgment Act alone does not create a federal cause of action."  *Harris Cty. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015).  Count 3, pled under the DJA, concerns the same conduct complained of in Counts 1 and 2. *Compare* Counts 1 and 2 *with* Count 3, FAC, ¶ 66 ("Frost Bank wrongfully prevented business entities and individuals from applying for PPP loans from Frost Bank, despite meeting all federally-imposed PPP loan eligibility requirements, for lack of a business and / or lending relationship with Frost Bank.").

---

[5] Plaintiff alleges that "Frost Bank repeatedly states that eligibility is limited only to small businesses that are their existing customers as of April 1, 2020, *with a business checking account.*" FAC, ¶ 24.  Plaintiff references and attaches FAC Exhibit A (ECF 10-1), a copy of Frost's website describing PPP procedures, referencing "existing business checking customers." At ¶¶ 2, 3, 6, 21, 22, and 24, Plaintiff complains of Frost Bank's limitations related to *checking accounts*.  However, at other paragraphs, apparently lifted from the *Profiles* complaint, Plaintiff erroneously refers to a requirement of "*a lending or commercial banking relationship* with Frost Bank." FAC, ¶ 23 (emphasis added), ¶ 31, 61. These pleading errors are nonetheless without relevance to the Motion at hand. The *Profiles* court found no CARES Act violation even for BofA's requirement that applicants maintain a credit or lending relationship with BofA.

For the reasons cited above, Plaintiff's claims under the CARES Act and SBA fail, and as such, so too must his claims for the same conduct brought under the DJA. The *Profiles* court analyzed this issue and reasoned that the *Profiles* Plaintiffs could not state a claim for declaratory relief in the absence of another viable claim. Mem. Op. at 13 n.6.

## E.    Plaintiff's Injunction Claims Fail

Plaintiff's is not entitled to the extraordinary remedy of a preliminary or permanent injunction. First, Plaintiff does not allege a viable cause of action on which he could succeed on the merits. Second, Plaintiff does not plead facts to show irreparable harm (or any harm at all) and his alleged harm is speculative. To be entitled to a preliminary injunction, Plaintiff must show:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if [] not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant [] will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). The party seeking preliminary injunctive relief must clearly show all elements. *Id.* For a *permanent* injunction one must demonstrate *actual* success on the merits; not just a *substantial likelihood* of success. *See, Allied Mark. Group, Inc. v. CDL Mark., Inc*., 878 F.2d 806, 809 (5th Cir. 1989).

The Court should dismiss Plaintiff's requests for injunctive relief, which are not standalone causes of action. Plaintiff does not allege a viable cause of action under the CARES Act or SBA 7(A). There is no cause of action asserted here on which Plaintiff could prevail, and thus no likelihood of success on the merits as a matter of law.

The *Profiles* court denied a request for a preliminary injunction.  *Profiles* Mem Op. at 13. The court held that Plaintiffs had not satisfied *any* of the four criteria to obtain injunctive relief: likelihood of success on the merits of their claims, irreparable harm, balance of the equities, and public interest. Regarding the first factor, the court held that Plaintiffs have no likelihood of success on their claims because: the CARES Act does not create a private right of action, Mem. Op. at 7–13; BofA's conduct is consistent with the CARES Act, Mem. Op. at 13–16; and Plaintiffs cannot state a claim for declaratory relief in the absence of another viable claim, Mem. Op. at 13 n.6.

Here, the essential element of immediate and irreparable harm is also lacking. Plaintiff alleges that "Plaintiff and the Class have suffered and will continue to suffer irreparable harm in the absence of injunctive relief enjoining Frost Bank from depriving Plaintiff and the Class from the rights and benefits bestowed by the CARES Act and its regulations, and do not have an adequate remedy at law."  FAC, ¶ 69.  This allegation is wholly conclusory and without any facts pleaded in support.

To establish irreparable injury, Plaintiff must demonstrate that the harm is "real, imminent, and significant – not merely speculative or potential – with admissible evidence and a clear likelihood of success." *Aquifer Guardians in Urban Areas v. Fed. Highway Admin*., 779 F. Supp. 2d 542, 574 (W.D. Tex. 2011). Immediate and irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." *Texas v. United States*, 86 F. Supp. 3d 591, 674 (S.D. Tex. 2015).

Plaintiff will not be irreparably harmed if he cannot apply for a PPP loan *from Frost Bank*, as opposed to other participating lenders. Plaintiff alleges that he is "a small business

that qualifies as an eligible applicant for a PPP loan under the CARES Act," FAC ¶ 14, and

"otherwise meet[s] the statutory requirements for a PPP loan."  FAC ¶ 6.  Plaintiff does not

identify his small business, the eligibility criteria, or any specific facts related to meeting

those criteria. Plaintiff does not allege he applied for a PPP loan from any lending

institution, including Frost Bank.[6] Plaintiff has not asserted that he has been foreclosed

entirely from applying, and does not allege that he has failed to receive a PPP loan from

other lenders. He does not allege any specific efforts taken to obtain a PPP loan.

As the *Profiles* court explained, "there are thousands of institutions participating in

PPP, and several that accept loans from new customers." 2020 WL 1849710, at *9.

Without evidence regarding whether plaintiff "applied for—or could have applied for—

loans with other financial institutions," they cannot demonstrate that their claimed inability

to apply for a PPP loan, at Frost Bank specifically, causes them imminent and irreparable

harm. *Profiles*, 2020 WL 1849710, at *9; *see also Martinez–Castañeda v. Haley*, 2013 WL

12106712, at *12 (W.D. Tex. July 1, 2013), adopted by 2013 WL 12106231 (W.D. Tex.

Oct. 30, 2013) ("Put simply, if the alleged harm is speculative, preventable, or reparable

through some other remedy, then injunctive relief should not issue.").

Plaintiff also asserts a separate, similar action alleging CARES Act violations

against Wells Fargo.  *See* No. 4:20-cv-01295 (Hittner, S.D. Tex.). There, the court *sua*

*sponte* denied Plaintiff's request for a temporary injunction in its complaint, at ECF 7. On

April 29, 2020, the court denied Plaintiff's subsequent Motion for a TRO (ECF 20 at p. 3),

---

[6] Discovery may well show that Plaintiff lacks any standing to assert his claims.

reasoning that: "Plaintiffs fail to show how Plaintiffs would suffer irreparable injury if not given access to a loan specifically from Wells Fargo. Plaintiffs also fail to explain why Plaintiffs could not obtain a loan under the PPP through another lender."[7]

The *Profiles* court also rightly rejected an invitation to speculate as to injury and redressability. *Profiles*, 2020 WL 1849710, at *10 ("To grant [the motion], the Court must assume not only that Plaintiffs would get approved for a PPP loan, but also that the loan amount would serve as a panacea for the lost revenue in their respective businesses. . . . [I]t would be quite extreme to attribute the dire plight facing American small businesses to one lender's eligibility criteria."). Thus, as in *Profiles*, Plaintiff here can assert only "speculative" and "remote," not "actual and imminent," harm. *W. Ala. Quality of Life Coal. v. U.S. Fed. Highway Admin.*, 302 F. Supp. 2d 672, 684 (S.D. Tex. 2004). Here, because Plaintiff did not and cannot assert the requisite harm, and does not assert a viable cause of action, his claim for injunctive relief must be dismissed.

###### F.   Plaintiff's New State-Law Claims (Counts 4 through 7) Fail

Plaintiff's FAC adds claims based on the consumer protection laws of 24 states (Count 4), and common law claims for negligence (Count 5), fraud (Count 6), and unjust enrichment (Count 7). FAC ¶¶ 72-90. Plaintiff fails to adequately plead the required elements of his new claims.

**Fraud.**  Plaintiff's allegations do not meet the pleading standards for fraud. Plaintiff alleges that Frost's "acts and/or omissions were fraudulent," and the injuries suffered were

---

[7] The court deferred ruling on the motion as to the request for a preliminary injunction until after a hearing for the preliminary injunction is conducted. *Id.* at 3. But no such hearing has been set.

the "direct and proximate result" of the fraudulent conduct.  Plaintiff does not make specific factual allegations that Frost: (1) made a representation to Plaintiff; (2) which was material, and false; nor (3) that Plaintiff relied on the representation. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010); Plaintiff does not allege that he did not know, or that Frost deceived him about, Frost's PPP loan applicant criteria. The exhibit attached to the FAC shows that Frost's criteria was publically available. ECF 10-1.

Plaintiff did not satisfy the heightened pleading standard for fraud in  Fed. R. Civ. P.  9(b).  Plaintiff must, but did not, specifically allege the "time, place and contents of the false representations," *Williams v. WMX Tech., Inc*., 112 F.3d 175, 177 (5th Cir. 1997).

Plaintiff also failed to plausibly plead any injury caused by the alleged fraud. Plaintiff pleads, in conclusory fashion, that "this preferential treatment to some, and the resulting prohibition to others, is neither harmless nor inconsequential," and that the practice of requiring a business banking relationship leaves some applicants "shut out" of the program.  FAC ¶ 8. But Plaintiff does not allege that *he* was "shut out."  He only pleads that he and the class "suffered damages … due their inability to apply for a PPP loan with Frost Bank." FAC Par. 55, 62.  Plaintiff did not otherwise plead how Frost's alleged fraud caused him injury.  In his fraud claim, he alleges only that "[t]he injury and harm that Plaintiff and Class members suffered was the direct and proximate result of Frost Bank's fraudulent conduct.  Accordingly, Plaintiff and the Class have suffered injury…" FAC at ¶¶ 81-82. *See Gen. Capital Grp. Beteligungsberatung GMBH*, 407 S.W.3d at 510 (Tex. Ct. App. 2013) (recovery for fraud requires "proof that the defendant's alleged false

representation caused the plaintiff injury"). Plaintiff will not plausibly be harmed merely because he cannot apply for a PPP loan *from Frost Bank*, if he can apply to other participating lenders. *See supra* at "Injunction Claims Fail." Plaintiff does not plead any facts that he sought to secure PPP funding from other lenders, nor whether he was "shut out," and, as Judge Hittner recognized in denying Plaintiff's motion for a temporary restraining order in his matter against Wells Fargo, Plaintiff can apply for loans through thousands of other PPP lenders. *See* TRO Order (ECF 20) at 3.8.

**Negligence.** Plaintiff does not allege the elements of a negligence claim: that Frost owed and breached a legal duty to Plaintiff, which breach proximately caused him damages. *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017) (plaintiff in a negligence action must establish "a legal duty, a breach of that duty, and damages proximately caused by the breach"). Plaintiff does not plead that Frost owed him a legal duty, nor is any duty owed. The CARES Act does not impose a duty on banks to issue loans to any borrower, and no other facts are alleged giving rise to any applicable legal duty. Further, no duty is owed to Plaintiff as a non-customer. *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. Ct. App. 2007) (a bank owes no duty to someone who is not a customer and with whom the bank does not have a relationship."). Without having pled a legal duty, Plaintiff cannot demonstrate that a breach of a legal duty "was a substantial factor in bringing about" any injuries. *IHS Cedars Treatment Ctr. of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004). Plaintiff also did not plausibly plead how Frost's alleged negligence caused him injury. Plaintiff only conclusorily alleges: "[t]he injury and harm that Plaintiff and Class members suffered was the direct and proximate result of Frost Bank's negligent

conduct. Accordingly, Plaintiff and the Class have suffered injury." FAC at ¶¶ 77-78. *See infra,* at Section F (lack of injury).

**Unjust Enrichment.** Plaintiff does not plead any element of an unjust enrichment claim. Unjust enrichment occurs "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Plaintiff does not identify any alleged benefit conferred on Frost in his conclusory assertions, and Plaintiff has not pled any actionable wrongful conduct. The only misconduct alleged is based on a misreading of the CARES Act. Further, Plaintiff did not plead injury resulting from unjust enrichment. *Coghlan v. Aquasport Marine Corp.*, 73 F. Supp. 2d 769, 771 (S.D. Tex. 1999) (where "defendant in an unjust enrichment action is enriched at the expense of the plaintiff, the plaintiff necessarily suffers injury.") *See infra,* at Section F (lack of injury).

**Claims Under Consumer Protection Statutes.** To allege a violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Plaintiff must plead, but he has not, that: (1) he is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) those acts caused Plaintiff damages. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). Plaintiff does not plead any deceptive conduct. Further, Plaintiff is not a "consumer"—an individual "who seeks or acquires by purchase or lease, any goods or services"—under the DTPA. Tex. Bus. & Com. Code § 17.45(4). Neither money nor extensions of credit qualify as "goods or services" under the Act. *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174–75 (Tex. 1980). Finally,

Plaintiff did not plausibly plead any injury or damages to Plaintiff caused by false, misleading, or wrongful acts.  *See infra,* at Section F (lack of injury); FAC at ¶¶ 72-74.

Plaintiff asserts claims under the laws of 23 other states to which he has pled no connection.  Courts elsewhere have held that plaintiffs lack standing to assert such claims. Plaintiff is a Texas resident who alleges that Frost Bank conducted business Texas.  FAC ¶ 14-16. Therefore, Texas law applies to Plaintiff's individual claims. The other state statutes could not apply. Plaintiff is the only individual before the Court; no class has been certified.  *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1068–75 (N.D. Cal. 2015) ("[T]he Court. . . require[s] the Plaintiffs to present a named class member who possesses individual standing to assert each state law's claims..."). Nevertheless, these claims would all fail, too, because plaintiffs fail to plead actionable wrongful conduct; the claimed wrongs are based upon a misinterpretation of the CARES Act.

## VIII.   CONCLUSION

Defendant Frost Bank respectfully requests that the Court grant its Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Original Class Action Complaint with prejudice in its entirety. Plaintiff has already amended his Complaint, and the fundamental legal deficiencies in that amended pleading cannot be cured by further amendments. Accordingly, dismissal with prejudice is appropriate.[8]

---

[8] *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (when "it is clear that the defects are incurable" court need not provide opportunity to amend); *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) (discretion to deny amendment for futility if amended complaint would fail to state a plausible claim); *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (dismissal with prejudice appropriate if a court finds that the plaintiff has alleged his or her best case).

Dated:  June 9, 2020                                 NORTON ROSE FULBRIGHT US LLP


                                                     */s/Daniel M. McClure*
                                                     Daniel M. McClure
                                                     State Bar No.  13427400
                                                     Federal ID No. 1726
                                                     dan.mcclure@nortonrosefulbright.com
                                                     1301 McKinney, Suite 5100
                                                     Houston, TX  77010-3095
                                                     Telephone:  (713) 651-5151
                                                     Facsimile:  (713) 651-5246

                                                     Steve Dollar
                                                     State Bar No.  24012538
                                                     steve.dollar@nortonrosefulbright.com
                                                     1301 Avenue of the Americas
                                                     New York, NY 10019-6022
                                                     Telephone: (212) 318-3000
                                                     Facsimile:  (212) 318-3400

                                                     Ronald D. Smith
                                                     State Bar No. 24056344
                                                     ron.smith@nortonrosefulbright.com
                                                     2200 Ross Avenue, Suite 3600
                                                     Dallas, TX 75201-7932
                                                     Telephone: (214) 855-8342
                                                     Facsimile: (214) 855-8200

                                                     Ashley Senary Dahlberg
                                                     State Bar No. 24075051
                                                     ashley.dahlberg@nortonrosefulbright.com
                                                     111 W. Houston Street, Suite 1800
                                                     San Antonio, Texas 78205
                                                     Telephone:  (210) 224-5575
                                                     Facsimile:  (210) 270-7205

                                                     *Attorneys for Defendant Frost Bank*

## CERTIFICATE OF SERVICE

On June 9, 2020, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served a copy of the foregoing on the following via the electronic case filing system of the court:

Salar Ali Ahmed
ALI S. AHMED, P.C.
Federal Id. No. 32323
State Bar No. 24000342
430 W. Bell Street
Houston, Texas 77019
Telephone: (713) 898-0982
Email: aahmedlaw@gmail.com

*Attorney for Edward L. Scherer*


*/s/ Daniel M. McClure*
Daniel M. McClure